# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| NORTHWEST IOWA TELEPHONE COMPANY, an Iowa corporation; COMMCHOICE OF IOWA, L.L.C., a Delaware limited liability company; and LONG LINES METRO, L.L.C., a Delaware limited liability company;<br><br>    Plaintiffs,<br><br>vs.<br><br>QWEST CORPORATION, a Colorado corporation,<br><br>    Defendant. | No. C04-4053-DEO<br><br>**ORDER** |

_____

   This matter is before the court on the issue of whether the plaintiffs should be compelled to produce an e-mail communication dated August 24, 2004, from James U. Troup to Paul Bergmann (the "subject e-mail"). A copy of the subject e-mail was transmitted in electronic format from one of the plaintiffs' attorneys, Tony S. Lee, to the plaintiffs' designated expert witness, Gary Neill. The defendant argues that because the subject e-mail was disclosed to the plaintiffs' expert, the document is discoverable under Federal Rule of Civil Procedure 26(a)(2) and applicable case law, and it must be produced. The plaintiffs argue the subject e-mail contains privileged attorney-client communications, its disclosure to their expert was inadvertent, the inadvertent disclosure did not waive the privilege, the subject e-mail formed no part of the expert's opinions in the case, and the document is not a proper subject of discovery and need not be produced.

The issue of whether the subject e-mail must be produced is brought before the court by the defendant's motion to compel (Doc. No. 74). The plaintiffs have filed a resistance (Doc. No. 89), and the defendant has filed a reply (Doc. No. 94). The court held a hearing on the motion, which involved numerous additional issues, and reserved ruling on the issue concerning the subject e-mail. Subsequent to the hearing, the plaintiffs supplemented their resistance with the Affidavit of Tony S. Lee (Doc. No. 108). The defendant has filed a supplemental brief (Doc. No. 111). The court finds the matter is now fully submitted, and turns to consideration of the defendant's motion to compel production of the subject e-mail.

## *BACKGROUND FACTS*

The defendant does not dispute the plaintiffs' account of how the subject e-mail came to be in the possession of the plaintiffs' expert, and the court accepts the representations of Tony S. Lee in that regard to be true. The relevant facts set forth by Mr. Lee in his Affidavit are as follows:

> 3. Prior to his October 5, 2005 deposition, Plaintiffs' expert witness Mr. Gary Neill contacted me on September 30, 2005 regarding certain documents he had previously reviewed to prepare his expert witness report and rebuttal report in the case. Mr. Neill requested that I send him certain documents already in his possession in electronic format for ease of reference. Pursuant to that request, I sent him the following documents in electronic format: the Extended Area Service Agreement between Qwest and [Northwest Iowa Telephone Company]; the Local Exchange Carrier Association Access Tariff; certain pages of the ICORE, Inc. Tariff F.C.C. No. 2[;] certain pages of the ICORE, Inc. Tariff F.C.C. No. 3; certain pages of the National Exchange Carrier Association, Inc. Tariff F.C.C.

> No. 5; Plaintiffs' Complaint; Plaintiffs' Amended Complaint; Qwest's Answer; the FCC's First Report and Order issued in <u>Implementation of the Local Competition Provisions in the Telecommunications Act of 1996: Interconnection between Local Exchange Carriers and Commercial Mobile Radio Service Providers</u>, CC Docket No. 96-98; CC Docket No. 95-185.
>
> 4. Shortly after Mr. Neill's deposition had begun on October 5, 2005, counsel for Qwest requested the immediate production of the September 30, 2005 e-mails that I had sent to Mr. Neill. One of the attorneys for Plaintiffs that was attending the deposition then contacted me and asked that I forward him those e-mails so that they could be produced to Qwest.
>
> 5. I forwarded these e-mails to Plaintiffs' counsel who, in the course of making copies for Qwest's attorney, discovered that one of the e-mails accidentally contained attorney-client privileged and work product protected information which Plaintiffs' counsel had sent to his clients more than a year earlier on August 24, 2004. Counsel redacted the e-mail and immediately produced the September 30, 2005 e-mails to Qwest's attorney on the day of Mr. Neill's deposition. The text of this one e-mail is the subject of a Motion to Compel Production of Documents filed by Qwest on October 19, 2005.

(Doc. No. 108, ¶¶ 3, 4 & 5)

In summary, it appears the plaintiffs provided Mr. Neill with certain documents to review, such as tariffs, service agreements, and the pleadings in this case. Mr. Neill later asked that those documents be provided to him in electronic format for ease of access, and in transmitting the documents to Mr. Neill in electronic format, the plaintiffs' attorney inadvertently attached the subject e-mail. The court accepts the plaintiffs' representation that the disclosure was inadvertent.

3

The court also accepts the plaintiffs' representation, which is unrebutted by the defendant, that Mr. Neill issued his initial expert report on May 16, 2005, and his rebuttal expert report on August 5, 2005. Thus, both of Mr. Neill's reports were issued prior to the inadvertent transmission of the subject e-mail, but the subject e-mail was transmitted to Mr. Neill prior to his deposition.

During his deposition on October 5, 2005, Mr. Neill testified he had no recollection of what was in the subject e-mail.

## *DISCUSSION*

### *A. The Parties' Arguments*

In its motion to compel production of the subject e-mail, the defendant argues the plaintiffs waived any privilege as to the subject e-mail when they disclosed the document to their expert. The defendant argues the plaintiffs' privilege claim as to the subject e-mail "is indefensible on multiple grounds," and the document must be disclosed, citing Federal Rule of Civil Procedure 26(a)(2); *Pepsico, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 n.2 (8th Cir. 2002); and *Pioneer Hi-Bred International, Inc. v. Ottawa Plant Food, Inc.*, 2003 U.S. Dist. LEXIS 13963 (N.D. Iowa 2003). (*See* Doc. No. 74-3, pp. 7-8)

The plaintiffs assert the defendant's interpretation of the *Pioneer Hi-Bred* holding and other law is overly broad. The plaintiffs argue there is no definitive Eighth Circuit case law discussing the scope of Rule 26(a)(2) as applied to a document that has been disclosed inadvertently, and they therefore rely on cases from other courts in arguing the subject e-mail need not be disclosed. (*See* Doc. No. 89-1, pp. 12-17) The plaintiffs urge the court to use a five-factor balancing test formulated by the Seventh Circuit Court of Appeals in *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 644 (S.D. Ind.

4

2000), arguing the Eighth Circuit adopted a similar five-factor test in *Gray v. Bicknell*, 86 F.3d 1472, 1483-84 (8th Cir. 1996), a case decided under Missouri law. The plaintiffs claim application of the five-factor test leads to the conclusion that the subject e-mail need not be disclosed.

The defendant responds by arguing disclosure of the subject e-mail "infects the expert's opinions and testimony from that time forward, and is accordingly not a 'harmless error' but rather poses a substantial risk of harm to [the defendant]." (Doc. No. 94, p. 5) The defendant argues the subject e-mail was disclosed to Mr. Neill in preparation for his deposition, and Mr. Neill "cannot avoid having his subsequent testimony colored by the disclosure." (*Id.*)

Further, the defendant argues that to avoid disclosure, the plaintiffs must, at the least, show Mr. Neill did not review the subject e-mail, and the defendant points out that despite being given every opportunity to do so, the plaintiffs have failed to make such a showing. (Doc. No. 111) Instead, the defendant argues, all the plaintiffs have done is provide Mr. Lee's Affidavit in which he asserts disclosure of the subject e-mail was inadvertent, and the subjects of the e-mail are not topics about which Mr. Neill will testify. The defendant asserts that "once an expert is informed of the client's (or lawyers') view of the case, the expert's opinions are subject to that knowledge, i.e., biased," and "this bell cannot be unrung." (Doc. No. 111, p. 3 n.1)

### *B. Applicable Law*

The present inquiry raises issues relating to the interaction between, on one hand, the general rule that all materials disclosed to a testifying expert witness are discoverable and, on the other hand, the rule that applies to the inadvertent disclosure of otherwise privilege attorney-client communications.

5

Rule 26(a)(2) requires a testifying expert to prepare a written report that contains

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2). Applying Eighth Circuit jurisprudence, the Federal Circuit has interpreted Rule 26 to require production of all materials disclosed to an expert witness in connection with the expert's testimony, holding "the attorney-client privilege and any work product protection [are] waived by disclosure of confidential communications to expert witnesses." *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001). The court explained its ruling as follows:

> Although there is some contrary authority at the district court level, *see, e.g., Nexxus Prods. Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 10 (D. Mass 1999), the 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure make clear that documents and information disclosed to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report. . . . The accompanying Advisory Committee Note explicitly states that "[t]he report is to disclose the data and other information considered by the expert. . . . Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." . . . The

> revised rule proceeds on the assumption that fundamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony. Indeed, we are quite unable to perceive what interests would be served by permitting counsel to provide core work product to a testifying expert and then to deny discovery of such material to the opposing party.

*Id*.

The defendant argues this "black letter law" makes the plaintiffs' position "indefensible on multiple grounds," and urges the court to compel production of the subject e-mail. Had the document been disclosed to Mr. Neill intentionally, in the ordinary course of preparing him to provide a report and testify at trial, the court would agree. However, the waters are muddied where, as here, the disclosure to the expert was inadvertent.

In *Engineered Products Co. v. Donaldson Co.*, 313 F. Supp. 2d 951 (N.D. Iowa 2004), Chief Judge Mark W. Bennett examined, in some detail, Eighth Circuit jurisprudence relating to "an 'inadvertent' disclosure of otherwise privileged attorney-client communications in [a] federal question case," noting it is not clear what rule the Eighth Circuit Court of Appeals would apply. *Donaldson*, 313 F. Supp. 2d at 1020. Judge Bennett concluded the Eighth Circuit would reject both the "lenient approach," requiring production only of documents that are disclosed intentionally and knowingly, and the "strict test," requiring production of any document produced, whether intentionally or otherwise. Instead, Judge Bennett concluded the Eighth Circuit would adopt a "middle of the road" test, in which "'the court undertakes a five-step analysis of the unintentionally disclosed document to determine the proper range of privilege to extend.'" *Donaldson*, 313 F. Supp. 2d at 1021 (quoting *Gray v. Bicknell*, 86 F.3d 1472, 1483-84 (8th Cir. 1996)). The test requires examination of the following five factors:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error.

*Gray*, 86 F.3d at 1484 (citing *Hydraflow, Inc. v. Enidine, Inc.*, 145 F.R.D. 626, 637 (W.D.N.Y. 1993); *Alldread v. City of Grenada*, 988 F.2d 1425, 1433 (5th Cir. 1993)). The court explained that if this analysis results in a determination that the privilege was waived by the inadvertent disclosure, then the documents are no longer privileged, and the court further has the discretion to determine the privilege waived as to "related, but-as-yet undisclosed, documents." *Id*.

The *Gray* court found this "middle test," also called the "*Hydraflow* test," to be the most appropriate, explaining its reasoning as follows:

> This test strikes the appropriate balance between protecting attorney-client privilege and allowing, in certain situations, the unintended release of privileged documents to waive that privilege. The middle test is best suited to achieving a fair result. It accounts for the errors that inevitably occur in modern, document-intensive litigation, but treats carelessness with privileged material as an indication of waiver. The middle test provides the most thoughtful approach, leaving the trial court broad discretion as to whether waiver occurred and, if so, the scope of that waiver. It requires a detailed court inquiry into the document practices of the party who inadvertently released the document.

*Id*.

The plaintiffs urge the court to adopt a similar test here, arguing application of the five-factor test leads to a conclusion that the subject e-mail need not be disclosed to the

defendant. The defendant responds that disclosure of the subject e-mail to Mr. Neill, even if inadvertent, has resulted in "irreversible consequences" to the defendant. (Doc. No. 94, at p. 5) The defendant argues, "Where the disclosure is attorney work product bearing on the issues for which the testifying expert is retained, the better-reasoned position is that the effect of the disclosure cannot be reversed by the expert returning the document to counsel." *Id.* The defendant argues further that even though the subject e-mail was disclosed to Mr. Neill after he had prepared both of his expert reports, the disclosure "occurred in preparation for his deposition," and it "therefore infects the expert's opinions and testimony from that time forward, and is accordingly not a 'harmless error' but rather poses a substantial risk of harm to [the defendant]." *Id.*

The court could not jump to the conclusion urged by the defendant without first reviewing Mr. Neill's expert reports. Rule 26 requires disclosure of "data or other information *considered by the witness in forming the opinions*" (emphasis added). The Advisory Committee note instructs that the expert's "report is to disclose the data and other information *considered by the expert*" to prevent a party from withholding "materials furnished to their experts *to be used in forming their opinions*." Even the defendant's own argument presumes "the disclosure is attorney work product *bearing on the issues for which the testifying expert is retained*."

As a result, the court ordered the plaintiffs to provide Mr. Neill's expert reports for review. The court has now reviewed those reports, and although it is clear, from the timing of the reports, that Mr. Neill could not have considered the contents of the subject e-mail in forming his initial opinions, it also is clear that the matters discussed in the e-mail are relevant to the issues for which he has been retained. For example, in his rebuttal expert report, Mr. Neill addresses the contention of defense expert Jeffrey D. Owens "that any wireless intra-MTA calls that may be involved in this case, regardless of whether they

are delivered to Plaintiffs via the INS access tandem, Plaintiffs' access service trunks or through EAS trunks, are all local as a result of his interpretation of certain FCC decisions." The subject e-mail specifically discusses how the plaintiffs can address the question of what portion of the calls involved in this case were wireless-originated.

The court therefore finds the subject e-mail must be disclosed. The plaintiffs have come forward with no evidence to indicate Mr. Neill did not review the subject e-mail prior to his deposition, or that he has not reviewed the subject e-mail since that time. The court agrees with the defendant that the bell cannot be unrung, and the contents of the subject e-mail have the potential to influence Mr. Neill's opinions as the case goes forward. The court finds that disclosure of the subject e-mail to Mr. Neill constituted waiver of the attorney-client privilege, despite the fact that the disclosure was unintended. *See In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d at 1375.

The plaintiffs are directed to provide the defendant with an unredacted copy of the subject e-mail by **December 28, 2005**.

**IT IS SO ORDERED.**

**DATED** this 20th day of December, 2005.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT